Submitted November 15, 2018, reversed October 9, 2019

In the Matter of Z. W. Y.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

Z. W. Y.,
*Appellant.*

Marion County Circuit Court
16CC06622; A166276

450 P3d 544

Appellant in this civil commitment case appeals an order continuing his commitment to the Oregon Health Authority for an additional period not to exceed 180 days. On appeal, appellant asserts that the trial court erred in determining that he was a danger to others because there was no evidence in the record that he had harmed or attempted to harm others in the past. *Held*: The record was insufficient to support a finding that appellant was highly likely to harm others if he were released.

Reversed.

Steven B. Reed, Senior Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Hadlock, Presiding Judge, and DeHoog, Judge, and Aoyagi, Judge.

HADLOCK, P. J.

Reversed.

**HADLOCK, P. J.**

Appellant challenges an October 2017 order of continued commitment for mental illness, arguing that the record does not support the trial court's determination that appellant's mental disorder makes him a danger to others. We agree and, accordingly, reverse.

The trial court's task in a continued-commitment proceeding is to "determine whether the person is still a person with mental illness and is in need of further treatment." ORS 426.307(6). When, as here, a continued commitment is pursued based on the person being a "danger to *** others," the trial court must determine whether the person's mental disorder makes the person "highly likely to engage in future violence toward others, absent commitment." *State v. S. E. R.*, 297 Or App 121, 122, 441 P3d 254 (2019). "Because the standard of proof in a civil commitment case is the clear-and-convincing-evidence standard, the evidence supporting commitment must be sufficient to permit the rational conclusion that it is highly probable that the person poses a danger to *** others." *Id*. Accordingly, "the evidence must supply a concrete and particularized foundation for a prediction of future dangerousness absent commitment." *Id*. (internal quotation marks omitted). In determining whether the evidence meets that standard, we review the record in the light most favoring the trial court's disposition. *See id*. (applying that standard in the commitment context).

At the time of the October 2017 continued-commitment hearing, appellant was 32 years old and a patient at the Oregon State Hospital; he had been there since January 2017. Dr. Flynn, appellant's treating psychiatrist, testified that appellant is the subject of a stalking order obtained by a woman, A, whom appellant had repeatedly harassed at her worksite. Petitioner was originally admitted to the state hospital in 2015 after being charged with a restraining-order violation "for restoration for capacity to aid and assist in his own defense." Appellant "was found[] never able to assist," was transferred to county jail, and then was civilly committed in October 2016. By January 2017, he had been returned to the state hospital.

Flynn testified that appellant has been diagnosed with schizophrenia, which causes him to suffer delusions. Some of those delusions relate to A: "through his mental illness, [appellant] perceived that *** [A] was his girlfriend." Appellant is angry with A and "blames her for him being admitted to the hospital." Appellant has talked about "seeking revenge" against A and once, several months before the continued-commitment hearing, described a fantasy about breaking into her home and strangling her. More recently, appellant spoke about wanting to protest in front of A's house and throw red paint on her. Appellant wants to have the stalking order lifted so that he can contact A. He wishes to express his anger toward A if he is released from the hospital; he feels "within his right to contact her, call her, go to her home, go to her workplace." Appellant wants to have A arrested and charged with perjury for statements she made in association with obtaining the stalking order.

Appellant takes medications for treatment of his mental disorder, although one medication had recently been changed because he had "maintained this delusional idea that he is in a relationship with [A] and he wants to seek revenge." Flynn thinks there has been some success in treatment because, during his past hospitalization, appellant was not taking medications and "was much more aggressive and required multiple seclusions for aggressive behavior." Since he has been taking medications, appellant has been "less irritable" and "less hostile." Flynn would "expect all of that to return" and would expect appellant's delusions and anger to worsen if he stopped taking medications. However, Flynn acknowledged that appellant has not been aggressive toward any patients or staff at the state hospital.

Appellant has no insight into his mental disorder; as is common with people with schizophrenia, he does not understand that his "thoughts are the symptoms of the illness." He has said that he will stop taking medications when he leaves the hospital and he has expressed an interest in firearms. Flynn believes that appellant is dangerous to others because he "has a specific victim in mind," A, has "made multiple attempts to contact her even with the stalking order," and intends to seek her out to express his

anger. On one occasion when appellant went to A's worksite, a grocery store, he had a duffel bag and threatened to shoot A's coworkers.

Appellant testified on his own behalf at the continued-commitment hearing. He asserted that he had last tried to contact A about 10 months earlier, when he called the store where she worked. Appellant testified that he wanted the stalking order lifted because it was difficult for him to avoid the grocery store where A worked. He acknowledged "sort of hav[ing] romantic feelings" for A, but denied that he wanted a relationship with her. Appellant said that all he meant by getting revenge against A was "some kind of verbal confrontation or to try to get her prosecuted." He acknowledged that he "probably come[s] across as being violent" because he is "kind of preoccupied with warfare and stuff," and he further acknowledged having been "in fights with people." However, appellant described only one such incident, which he said occurred when another person punched and kicked him, and he "just kind of pushed [the other person] away." Appellant confirmed that he would not voluntarily take psychiatric drugs if released from the hospital; he does not think he is helped by the medications he is taking. He also confirmed that he would not necessarily comply with the stalking order. At the end of the hearing, the trial court continued appellant's commitment without elaboration.

On appeal, appellant focuses on the absence of evidence that his mental disorder has ever led him to cause anyone physical harm; he also contends that no evidence supports a finding that he would be highly likely to harm another person in the near future. In response, the state acknowledges that the record includes no evidence that appellant has physically harmed A or anyone else.[1] The state contends, however, that the trial court could reasonably infer that appellant's schizophrenia made him dangerous to others from the evidence of appellant's anger with A,

---

[1] In that regard (and others), the record in this case differs from that in *State v. Z. W. Y. (A167562)*, 299 Or App 717, 450 P3d 553 (2019). In that other continued-commitment case, involving the same appellant, the record does include evidence of appellant's past physically violent acts. *See id.* at 724-25. In that case, we affirmed the continued commitment. *Id.*

his refusal to abide by the stalking order, and his intention to stop taking medication if not hospitalized.

We agree with appellant. True, we have at least once affirmed a "danger to others" commitment in a case in which the person with a mental disorder had not yet engaged in acts of physical violence. *State v. G. L.*, 208 Or App 212, 144 P3d 967 (2006). In that case, however, evidence demonstrated the appellant's "rationalization of the need to take action, with a focus on plans to kill his former wife" and that he had perseverating and "extremely focused homicidal ideation" that experts agreed he was capable of pursuing. *Id.* at 215-17. Indeed, the record included evidence that the appellant, who was homeless, had traveled from Eugene to Portland and had gone to a police station, explained his detailed plan to commit murder, and described a previous attempt to kill his former wife, which had involved arming himself with a weapon and sleeping outside her home. *Id.* at 214-15. In affirming the appellant's commitment, we noted the parallels between the situation that led to the commitment hearing and the appellant's claimed previous attempt on his former wife's life. *Id.* at 217.

The combination of those circumstances in *G. L.* led us to conclude that the appellant's past actions "clearly form[ed] a foundation for predicting future dangerousness" even in the absence of evidence that he had actually committed specific acts of violence. *Id.* at 216-17; *see State v. T. W. W.*, 289 Or App 724, 731, 410 P3d 1032 (2018) (in the absence of specific acts of violence, a "danger to others" finding can be justified only if appellant's other past actions, including verbal acts "clearly form a foundation for predicting future dangerousness"). *Cf. State v. J. P.*, 295 Or App 228, 235, 433 P3d 452 (2018) (contrasting *G. L.* with another case in which threats of violence were insufficient to support a "danger to others" commitment because they were "not bona fide threats making future violence or harm highly likely").

This case includes no evidence rising to that level. As the state acknowledges, the record contains no evidence that appellant's schizophrenia has ever led him to be physically violent toward another person. His testimony about having been in "fights" is not sufficient, as little in the

record suggests what appellant meant by that term, which, to appellant, apparently included him pushing away a person who had hit and kicked him. Moreover, although appellant had been hospitalized for about a year at the time of the continued-commitment hearing, he had not been physically aggressive toward any patient or member of hospital staff. Flynn's testimony that appellant had been "aggressive" during an earlier hospitalization includes no explanation of what Flynn meant by "aggressive," and it is clear from other parts of his testimony that Flynn uses the word to include assertive conduct that does not involve physically violent behavior.

Nor do appellant's nonviolent past acts "supply a concrete and particularized foundation for a prediction of future dangerousness absent commitment." *S. E. R.*, 297 Or App at 122. Appellant's persistence in pursuing A undoubtedly and understandably is alarming, as are both his fantasy about strangling her (which he described once, months before the hearing) and his expressed intention to continue violating the stalking order so he can confront her. But, unlike the appellant in *G. L.*, there is no evidence that appellant has persistent thoughts about harming A, and the record includes no evidence that appellant has made any plan or taken any steps toward physically hurting her beyond simply getting within her physical proximity. Appellant's interest in guns and his threat to shoot A's coworkers also are disturbing. However, nothing in the record suggests that appellant has ever possessed or attempted to obtain a firearm. In short, given the absence of *any* evidence suggesting that appellant has physically harmed others in the past or otherwise put them in danger—or has even attempted to do so—this record cannot support an inference that it is "highly likely" that appellant's behaviors will go further if he is released, so that he will become an actual danger to A or anybody else.[2] *See T. W. W.*, 289 Or App at 732 ("the fact that a person may frighten others, get agitated, be aggressive, or have the bad judgment to act in ways that make people uncomfortable is not enough to determine that he is

---

[2] We use the phrase "this record" advisedly, as a different record can lead to a different result, as our opinion in *State v. Z. W. Y. (A167562)*, 299 Or App 717, 450 P3d 553 (2019), illustrates.

a danger to others"; internal quotation marks and citation omitted).

Reversed.[3]

_____

[3] Because we conclude that the continued-commitment order must be reversed because the record does not support it, we need not address the alternative basis for reversal that appellant presents in his second assignment of error.